BOARD OF SUPERVISORS OF MADISON COUNTY *v.* BOURGEOIS.

[79 South. 91, In Banc.]

COUNTIES. *Bonds. Refunding county and municipal warrants.*

Laws 1918, chapter 209, providing for bond issues to refund municipal and county warrants, was not intended to require the board of supervisors to issue serial bonds to take up the outstanding loan warrant issued during the current year, and which would not mature for some months, and for the payment of which the taxes for the current year are pledged.

APPEAL from the chancery court of Madison county. HON. LAMAR F. EASTERLING, Chancellor.

Suit by Thomas E. Bourgeois against the Board of Supervisors of Madison County to restrain a bond issue decree for complainant, and defendant appeals. cree for complainant, and defendant appeals.

The facts are fully stated in the opinion of the court.

*Reid & White,* for appellant.

We understand that the chancellor's grounds for making the injunction issued perpetual were two-fold: First, he did not consider that the bonds could be legally issued to take up the outstanding notes or loan warrants because they are not yet due; and, second, because the act does not, by its terms, limit the board to the issuance of bonds to take up notes or loan warrants which are outstanding "now," and that, consequently, if the act is construed so as to authorize the board of supervisors to issue bonds to take up loan warrants or notes given in the anticipation of taxes, the board could issue as much as one hundred thousand dollars (that being the maximum amount allowed under section 334, Code of 1906, section 3703, Hemingway's Code) worth of bonds each year un-

der this act, because the act specially provides that nothing contained therein shall prevent the board from borrowing money in anticipation of taxes under said section 334, Code of 1906.

As to the first proposition, that the bonds could not in any event be issued until the notes or loan warrants are due, we respectfully submit that to give this construction to the statute would force every county which owed loan warrants to default in the payment of their obligations before they would be allowed to issue bonds to take them up. Certainly the legislature did not intend that the board of supervisors must wait until its notes were actually due and its creditors demanding payment of their money before the board could issue bonds to provide for their payment. It is a matter of common knowledge that the advertising, issuance, sale, lithographing, and actual consummation of a bond issue requires a month or two at the very least, and to give the statute this construction would force counties which have always jealously maintained their credit by making prompt payments become backward debtors, to the annoyance and possible injury of their creditors, as well as to the injury of the county's credit. Certainly the legislature realized that the various boards of supervisors would not issue bonds to take up these out-standing loan warrants unless arrangements could be made with the holders of the loan warrants to accept the earned interest only, as was done in the case at bar.

As to the second proposition, we feel sure that the court would necessarily write the word "now" into the act when the entire subject-matter dealt with is taken into consideration. The purpose of the legislature seems to us very manifest. It was intended that the boards of supervisors of the various counties not only might, but must, take up all of their warrants and their outstanding short term obligations,

issuing serial bonds therefor, so that all of the money the county owed would be in the form of bonds. Thereafter, the county must operate in effect on a cash basis. No county warrants could be issued unless there was money in the particular fund upon which they were drawn to pay the same, and the board would only be allowed to borrow money in anticipation of taxes, to be repaid not later than February 15th.

We respectfully urge that it was clearly the intention of the legislature that by the words "warrants and other obligations," the ordinary loan warrants of the county, such as the present bonds are sought to be issued for, were intended to be included.

*Foot & Ray,* for appellee.

Section 1, chapter 209, Laws of 1918, provides as follows: "That every municipality and county which has outstanding warrants and other obligations, and insufficient funds in the treasury to pay the same, is hereby empowered and required to at once prepare to take up such warrants and other obligations from the proceeds of serial bonds which shall be issued for that purpose."

We respectfully submit that the term "outstanding warrants and other obligations" was intended to refer to warrants or obligations due, past due, or payable *instanter* and not to the loan warrants or notes of the county, maturing at a future date. If the term "other obligations" is construed to include obligations which have not yet matured, then it would also include the outstanding bonded indebtedness of the county. The outstanding bonds are simply promises to pay at some specified future date, and in this respect are of the same character as the loan warrants of the county. Appellant contends that if the county

would have to wait until its loan warrants matured, before issuing the bonds, then the county would have no funds with which to meet its debts. We respectfully submit it would be in no worse condition than heretofore, for the reason that section 2 of said act provides that, but shall not prevent either a municipality of a county from borrowing money in anticipation of taxes, as now provided by law." The present debt has been carried from year to year by borrowing in this manner, and there is nothing to prevent a continuace of it.

On the other hand, the act provides that every county which has outstanding warrants and other obligations, etc. This statute will be on our statute book in 1919, as it now stands, and will read as it now reads. If it is construed to include obligations which have not yet matured, as is here sought to be done, then there is absolutely nothing in the statute to prevent the various boards of supervisors of the state to continue to borrow money each year in anticipation of taxes, and then issuing bonds with which to fund such loan warrants. There would be no limit to the amount of bonds which the board of supervisors of a county might eventually issue, unless prevented by future legislation. We therefore respectfully submit that it was the intention of the legislature to provide for the issuance of bonds to take up only matured or past due obligations of the respective counties, and not obligations maturing at a future date.

ETHRIDGE, J., delivered the opinion of the court.

Bourgeois, the appellee, filed a bill in the chancery court alleging that he is a resident freeholder and taxpayer of Madison county, and that the board of supervisors of said county on the 5th day of June, 1918, passed an order providing for the issuance of eighty thousand dollars Madison county funding bonds,

to be issued under the provisions of chapter 209 of the Laws of 1918, to bear interest at the rate of five and three fourths per cent., to be dated June 1, 1918, and to mature and become payable two thousand dollars each year, on the 1st of June, in each of the years 1919 to 1958, said bonds to be issued for the purpose of refunding eighty thousand dollars of county loan warrants issued under section 334, Code of 1906, on March 4, 1918, and payable January 1, 1919, bearing six per cent. interest; that in accordance with the order of the board notice was published in a newspaper published in said county in the issue of June 7, 1918; that said bonds should be issued at the regular July, 1918, meeting of the said board; and that the said bonds are by the terms of the said order already sold, a copy of said order being made an exhibit to the bill, and reciting an inebtedness off eighty thousand dollars, six per cent. interest, dated and legally issued March 4, 1918, and the county has no money in its several funds from which to pay the same, and recites that C. W. McNear & Co., of Chicago, Ill., have made a good and valid offer to refund said eighty thousand dollars loan warrants into a bond issue. It is therefore ordered that the county issue eighty thousand dollars refunding bonds, bearing five and three fourths per cent., payable semi-annually, to be dated June 1, 1918, and mature and be payable two thousand dollars per year on the 1st day of June in each year from 1919 to 1958, both inclusive, payable at a named bank in New York City, and that the offer of said McNear & Co. "be, and the same is hereby, accepted." It also appears from the exhibit of the bill that on the date of June 5, 1918, McNear & Co. made a written offer of purchase at a price of par and accrued interest to date of delivery; and the bill prayed for an injunction against the issuance of said bonds, and an injunction was

granted by the chancellor, and on hearing made perpetual, from which judgment county appeals here.

Chapter 209 of the Laws of 1918 reads as follows:

"That every municipality and county which has outstanding warrants and other obligations, and insufficient funds in the treasury to pay the same, is hereby empowered and required to at once prepare 'to take up such warrants and other obligations from the proceeds of serial bonds which shall be issued for that purpose. As to counties, such bonds shall be issued in the manner prescribed in sections 331, 332 and 333 of the Code of 1906, in so far as such sections may be applicable. But such bonds shall be issued, regardless of whether or not such issue shall create a total bonded indebtedness of more than five per cent. of the assessed value of the taxable property of the county. As to municipalities, such bonds shall be issued in the manner prescribed in the Laws of 1914, chapter 147, in so far as the same may be applicable. But such bonds shall be issued regardless of whether or not such issue shall create a total bonded indebtedness of more than ten per cent. of the assessed value of the taxable property of the municipality:

"Provided, also, that no election shall be held on the question of the   .   .   .   bonds required in this section, but the issuance of such bonds is hereby declared to be mandatory on all counties and municipalities:

"Provided, that nothing in this section shall be construed to require the payment of disputed debts or obligations.

"Not to Incur Interest-Bearing Debt, Except, When.

"Sec. 2. That no interest-bearing debt, except as provided in section 1 of this act shall be incurred in any county, municipality or other taxing district, unless authorized by a majority of the electors who shall vote in an election called for that purpose; but shall not prevent either a municipality or a county

from borrowing money in anticipation of taxes, as now provided by law.

"Warrants Not to Issue Unless Funds on Hand to Pay Same.

"Sec. 3. That no warrant shall be issued by any county or municipality unless there is sufficient money in the particular fund from which the allowance is made, to pay such warrant.

"Serial Payment Bonds Only, May be Issued.

"Sec. 4. That no county or municipality shall issue any bonds except on the serial payment plan.

"Penalty on Officials for Violation.

"Sec. 5. For failure to comply with this act any tax payer may institute a suit on the bond of any official who is required to give a bond, and in addition thereto, such official may be punished as for a misdemeanor, and on conviction be fined not more than five hundred dollars.

"Conflicting Laws Repealed.

"Sec. 6. That all laws and parts of laws in conflict with this act be, and the same are hereby repealed.

"Sec. 7. That this act take effect and be in force from and after sixty days after its passage."

As we construe this law, it was designed and intended to apply to municipality and county warrants and other obligations due and unpaid at the date of the passage of the act, and where insufficient funds were in the treasury to pay the same, and that the act would not apply to warrants or bonds or other obligations lawfully issued which were not due but were to become due in the future. By the provisions of section 2 of the act it is expressly provided "but shall not prevent either a municipality or a county from borrowing money in anticipation of taxes, as now provided by law."

By reference to section 334, Code of 1906 (section 3707, Hemingway's Code), under which the loan war-

rants were issued in this case, it is provided that:

Such warrant "shall be payable on the first day of January next after their issuance. For the payment of such loan the board of supervisors may levy a special tax each year sufficient to pay the amount borrowed that year, with interest, and such loan warrants shall be first paid out of the money collected for taxes for that year."

It is clear to us that chapter 209 was not intended to require the board of supervisors to issue serial bonds to take up outstanding loan warrants issued during the current year, and which would not mature for some months, and for the payment of which the taxes for the current year are pledged. If we were to construe the statute as applying to loan warrants and bonds outstanding which were not due, we would be confronted with the constitutional provision that no law shall be passed which impairs the obligation of the contract. The judgment of the chancellor is affirmed.

*Affirmed.*